## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA



FILED by ___ D.C.

OCT 09 2014

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

### CASE NO. 14-20286-CR-ALTONAGA(s)(s)
18 U.S.C. § 1962(d)
18 U.S.C. § 1959(a)(1)
18 U.S.C. § 1952(a)(3)
18 U.S.C. § 1959(a)(5)

UNITED STATES OF AMERICA

v.

JOSE IVAN HERRERA,
 a/k/a "Spyro,"
LEONEL ANDRES CARRERA,
 a/k/a "Leo,"
VICTOR EMMANUEL LOPEZ,
 a/k/a "Magic,"
RAMON MADRUGA,
 a/k/a "Porky,"
ALEX ENRIQUE SOMARRIBA,
 a/k/a "A-Rock,"
ROGELIO PEREZ,
 a/k/a "Popeye,"
EDDIE CAMACHO,
 a/k/a "NeNe,"
MIGUEL PEDRAZA,
 a/k/a "Fuzzy,"
RYAN PEREZ,
 a/k/a "Lil Dk,"
CARLOS MENA,
 a/k/a "Rollo,"
ROBERT MARTINEZ,
 a/k/a "Trap,"
CARLOS GOMEZ,
 a/k/a "Lokes,"
GUILLERMO SINISTERRA,
 a/k/a "Memo,"
PIERO BENITEZ,
 a/k/a "Bam Bam," and
SANTIAGO SALCEDO,
 a/k/a "Chino,"
     Defendants.
_____/

**SECOND SUPERSEDING INDICTMENT**

The Grand Jury Charges that:

**COUNT 1**
**Conspiracy to Participate in Racketeering Activity**
**18 U.S.C. § 1962(d)**

Introduction

1.    At various times relevant to this Second Superseding Indictment, the following defendants, and others known and unknown, were members of the "Almighty IMPERIAL GANGSTERS Nation" (hereinafter the "IMPERIAL GANGSTERS"), a criminal organization whose members and associates engaged in acts of violence, including murder, attempted murder, aggravated battery, aggravated assault, narcotics distribution, and other criminal activities, and which operated in the Southern District of Florida, the Northern District of Illinois, the Northern District of Indiana, and elsewhere: **JOSE IVAN HERRERA, a/k/a "Spyro," LEONEL ANDRES CARRERA, a/k/a "Leo," VICTOR EMMANUEL LOPEZ, a/k/a "Magic," RAMON MADRUGA, a/k/a "Porky," and ALEX ENRIQUE SOMARRIBA, a/k/a "A-Rock," ROGELIO PEREZ, a/k/a "Popeye," EDDIE CAMACHO, a/k/a "NeNe," MIGUEL PEDRAZA, a/k/a "Fuzzy," RYAN PEREZ, a/k/a "Lil Dk," CARLOS MENA, a/k/a "Rollo," ROBERT MARTINEZ, a/k/a "Trap," CARLOS GOMEZ, a/k/a "Lokes," and GUILLERMO SINISTERRA, a/k/a "Memo."**

**General Background and Structure of the Enterprise**

2.    The IMPERIAL GANGSTERS was a nationally known criminal street organization that originated in the near northwest-side of Chicago, Illinois in approximately mid-1970. From that location, the IMPERIAL GANGSTERS spread to other areas of Chicago,

- 2 -

suburbs of Chicago, other areas of Northern Illinois, Northwest Indiana, Wisconsin, and other regions of the United States, including Florida.

    3.    The Chicago and Suburban area was organized into the following sections:

    a.    **Devil Side,** which consisted of West Altgeld Street (north), North Spaulding Avenue (east), West Belden Avenue (south), and North Central Park Avenue (west);

    b.    **Dark Side,** which consisted of West Belden Avenue (east), West Cortland Street (south), North Central Park Avenue (east), West Dickens Avenue (south), and North McVicker Avenue (west);

    c.    **Cameron City,** located at the intersection of West North Avenue and North Hamlin Avenue;

    d.    **Belden City,** located at the intersection of Belden Avenue and Monitor Avenue;

    e.    **L-Dub,** located at the intersection of North Lavergne Avenue and West Wrightwood Avenue; and

    f.    **The Jungle,** which was located in Franklin Park, Illinois in the vicinity of Grand Avenue and Mannheim Road.

    4.    In addition to the above Illinois locations, the **Sterling** members were located in Sterling, Illinois.

    5.    The Northwest Indiana area operated in East Chicago, Indiana and consisted of primarily two sections:

    a.    **Harbor** or **Trey-Nine,** located in the vicinity of 139th Street; and

b.     **149th Street** or **Four-Nine** or **No Love Side,** located in the vicinity of 149th Street.

6.     The South Florida area was organized into the following sections:

a.     **Money Side,** which consisted of Broward County;

b.     **Homicide,** which consisted of areas within Miami-Dade County including Little Havana, Allapattah, Hammocks, Kendall, and Homestead;

c.     **Palm Beach County**; and

d.     **Orlando,** which consisted of areas surrounding Orlando, Florida, including Kissimmee.

7.     Members of the IMPERIAL GANGSTERS greeted each other, and showed their membership in the gang, using a set of hand-signs. In addition, IMPERIAL GANGSTERS often greeted one another, demonstrated their allegiance to the gang, or simply announced their arrival or presence in a particular area by exclaiming, "Amor." The IMPERIAL GANGSTERS employed a robust symbology as well, often using depictions of the cartoon character "The Pink Panther," an imperial crown, a seven-point crown, the numbers "197" & "97," and the letters "IG" or "AIGN" to demonstrate their affiliation. Members often had tattoos incorporating one or more of the aforementioned phrases or symbols, the Pink Panther being the most prominent. The colors associated with the IMPERIAL GANGSTERS were pink and black, and members of the IMPERIAL GANGSTERS often demonstrated their affiliation with the IMPERIAL GANGSTERS by wearing clothing containing these two colors, or incorporating some of the gang's other symbols or phrases.

8.      The IMPERIAL GANGSTERS were affiliated with the "Folk Nation" of gangs. Rival street gangs of the IMPERIAL GANGSTERS have included the Spanish Gangster Disciples, the Two Six Nation, the Latin Kings, the Black P-Stones, and the Spanish Cobras. Local factions of the IMPERIAL GANGSTERS would commonly develop rivalries with local gangs.

9.      For example, in **Belden City** (Chicago, Illinois) the IMPERIAL GANGSTERS were "at war" with local gangs known as the Milwaukee Kings and the Pachucos. In **Homicide** (Miami Dade, Florida) the IMPERIAL GANGSTERS went to "war" with a local gang known as Take-No-Shit, or TNS, and had disputes with other rival street gangs or with people whom they perceived to be rival gang members or who presented a general threat to the IMPERIAL GANGSTERS members.

10.     The IMPERIAL GANGSTERS had leadership structure, but did not always utilize official titles or ranks. It at all times had an individual who served as the leader and made decisions regarding gang business. The IMPERIAL GANGSTERS had one or two individuals who controlled and trained the "shorties," or prospective members. It had an individual who served as a treasurer and collected gang dues. It also had an individual who served as the enforcer and applied discipline for violations of the gang rules by meting out punishment.

## The Racketeering Enterprise

11.     The IMPERIAL GANGSTERS, including its leadership, membership, and associates, constituted an enterprise as defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

## Purposes of the Enterprise

12.     The purposes of the enterprise included, but were not limited to, the following:

a.     Enriching the leaders, members, and associates of the enterprise through, among other things, the illegal trafficking of controlled substances.

b.     Preserving and protecting the power, territory, operations, and proceeds of the enterprise through the use of threats, intimidation, violence and destruction including, but not limited to, acts of murder, attempted murder, assault with a dangerous weapon and other acts of violence.

c.     Promoting and enhancing the enterprise and its members' and associates' activities.

d.     Keeping victims in fear of the enterprise and in fear of its leaders, members, and associates through threats of violence and violence. The leaders, members, and associates of the enterprise undertook all steps necessary to prevent the detection of their criminal activities, and sought to prevent and resolve the imposition of any criminal liabilities upon their leaders, members, and associates by the use of murder, violence, and intimidation directed against witnesses, victims, and others. As part of this practice, the enterprise enforced what it referred to as an "SOS," or shoot on sight order, also known as "KOS" or kill on sight, against IMPERIAL GANGSTERS members who were suspected of having cooperated with law enforcement.

e.     Providing support to gang members who were charged with, or incarcerated for, gang-related activities.

## The Racketeering Conspiracy

13.     From in or about 1985, and continuing to the date of the return of this Second

Superseding Indictment, the exact dates unknown to the Grand Jury, in Miami-Dade County in the

Southern District of Florida, and elsewhere, the Defendants,

**JOSE IVAN HERRERA,**
a/k/a "Spyro,"
**LEONEL ANDRES CARRERA,**
a/k/a "Leo,"
**VICTOR EMMANUEL LOPEZ,**
a/k/a "Magic,"
**RAMON MADRUGA,**
a/k/a "Porky," and
**ALEX ENRIQUE SOMARRIBA,**
a/k/a "A-Rock,"
**ROGELIO PEREZ,**
a/k/a "Popeye,"
**EDDIE CAMACHO,**
a/k/a "NeNe,"
**MIGUEL PEDRAZA,**
a/k/a "Fuzzy,"
**RYAN PEREZ,**
a/k/a "Lil Dk,"
**CARLOS MENA,**
a/k/a "Rollo,"
**ROBERT MARTINEZ,**
a/k/a "Trap,"
**CARLOS GOMEZ,**
a/k/a "Lokes," and
**GUILLERMO SINISTERRA,**
a/k/a "Memo,"

each being a person employed by and associated with the IMPERIAL GANGSTERS, an

enterprise engaged in, and the activities of which affected, interstate and foreign commerce,

together with others known and unknown to the Grand Jury, did knowingly and intentionally

conspire to conduct and participate, directly and indirectly, in the conduct of the affairs of the

enterprise through a pattern of racketeering activity, as defined in Sections 1961(1) and (5) of Title

18, United States Code, consisting of multiple acts involving murder in violation of Florida Penal

Code, Title XLVI, Chapters 782.04, 777.011, and 777.04; Illinois Compiled Statutes, Chapter 720

Section 5/9-1; and Indiana Code 35-42-1-1, 35-41-2-4, 35-41-5-1; multiple acts involving robbery in violation of Florida Penal Code, Title XLVI, Chapters 812.13, 777.011, and 777.04; Illinois Compiled Statutes, Chapter 720 Section 5/1-18; and Indiana Code 35-42-5-1 and 35-41-5-2; multiple acts indictable under 18 United States Code Section 1951 (Hobbs Act Robbery); multiple acts indictable under 18 United States Code Section 1952 (interstate travel in aid of racketeering); and multiple acts involving narcotics trafficking, in violation of 21 United States Code Section 841(a)(1)(distribution and possession with the intent to distribute a controlled substance) and Section 846 (conspiracy to distribute and possession with the intent to distribute a controlled substance). It was part of this conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

### Manner and Means of the Enterprise

14.     Each member of the enterprise agreed to facilitate a scheme that included the operation and management of the enterprise by a conspirator. Members of the enterprise and their associates operated and conducted their affairs through a series of laws and policies, some of which were codified in a constitution and a series of laws.

15.     Members of the enterprise and their associates attended regular meetings at which they discussed, planned, and otherwise engaged in criminal activity, including murder, attempted murder, robbery, narcotics distribution, and obstruction of justice.

16.     Members of the enterprise and their associates initiated new members through the practice of causing them to endure physical assaults conducted by members of the enterprise at various gang-related gatherings.

17.     To enforce discipline and the rules of the enterprise, members of the enterprise and

their associates engaged in a system of "violations" in which members of the enterprise attempted to murder, conspired to murder, and physically beat and threatened those members of the enterprise who violated rules, questioned authority, or posed a threat to the leaders or purposes of the enterprise.

18.    Members of the enterprise and their associates employed and used gang-related terminology, symbols, gestures, and color schemes.

19.    To perpetuate the enterprise and maintain and extend their power, members of the enterprise and their associates committed illegal acts, including murder, attempted murder, robbery, aggravated battery, and aggravated assault against individuals who posed a threat to the enterprise or jeopardized its operations, including rival gang members and witnesses to the illegal activities of the enterprise. Pursuant to gang policy, members of the enterprise and its associates were required to participate in such acts, received standing orders to shoot rival gang members, and were instructed to retaliate for gang-related attacks upon the members and associates of the enterprise. In particular, older members would order newer members to perform acts of violence as a "test of heart." In addition, in an effort to maintain control of their neighborhoods, members were required to stand guard, or "post up," to protect the enterprise's drug trafficking and other criminal activity from threats by rival gangs or detection by law enforcement.

20.    Members and associates of the enterprise managed the procurement, transfer, use, concealment, and disposal of firearms and dangerous weapons within the enterprise to protect gang-related territory, personnel, and operations; to obstruct law enforcement; and to deter, eliminate, and retaliate against competitors and other rival criminal organizations and persons. On multiple occasions during the course of the conspiracy, members of the Northwest Indiana-based

IMPERIAL GANGSTERS traded firearms with Chicago-based IMPERIAL GANGSTERS, and sold guns to Chicago-based IMPERIAL GANGSTERS. In addition, Chicago-based IMPERIAL GANGSTERS acquired guns from other locations outside of Illinois.

21. Members and associates of the enterprise earned money for members and regularly financed activities through funds obtained in the illegal trafficking of controlled substances, including the distribution and possession with intent to distribute cocaine, cocaine base, heroin, 3,4-methylenedioxy-N-methylamphetamine (MDMA), and marijuana.

22. Members and associates of the enterprise used a financial system in which the leadership of the IMPERIAL GANGSTERS and others possessed, controlled, and otherwise maintained a monetary stash on behalf of the enterprise. As part of this practice, members of the enterprise paid requisite weekly or bi-weekly dues into the fund, which, in turn, the enterprise used to bail gang members out of jail, to help pay for the defense attorneys of gang members who had been charged with crimes, to send to commissary accounts of incarcerated gang members, and to purchase and sell firearms and controlled substances. At times, the members of the enterprise and their associates paid money into the fund by selling narcotics supplied by members of the gang.

23. Members of the enterprise and their associates hid, misrepresented, concealed and caused to be misrepresented, concealed, and hidden, the objectives of acts done in furtherance of the conspiracy, and used coded language and other means to avoid detection and apprehension by law enforcement authorities.

24. Members of the enterprise recruited and used juveniles to commit acts for the benefit of the enterprise.

25. Members and associates of the enterprise lied to law enforcement to protect the

criminal activity of themselves and other gang members.

26.     To join the IMPERIAL GANGSTERS, prospective members or "shorties" were given the option of shooting someone at the direction of the leadership of the gang, or enduring a physical assault conducted by members of the enterprise at various gang-related gatherings. While a "shorty" was attempting to join the gang, his conduct was observed by the members of the IMPERIAL GANGSTERS. While a "shorty" was attempting to join the gang, he was considered a part of the IMPERIAL GANGSTERS family and entitled to the full protection of the enterprise. The "shorty" was also subject to the rules and orders of the enterprise.

27.     On occasion, members from other areas would travel to Chicago to meet and associate with Chicago-based IMPERIAL GANGSTERS. In turn, Chicago-based IMPERIAL GANGSTERS would travel to Northwest Indiana, South Florida and other areas to meet and associate with members from those areas to further the goals of the enterprise.

### Overt Acts

28.     In furtherance of the conspiracy and to achieve the objects thereof, the conspirators performed or caused to be performed the following overt acts, among others, in the Northern District of Illinois, the Southern District of Florida, the Northern District of Indiana and elsewhere:

29.     On or about August 6, 1985, Miguel Rodriguez, aka "Mickey G," and other IMPERIAL GANGSTERS members were responsible for the murder of William Longmire.

30.     In or about September, 1985, IMPERIAL GANGSTERS members severely beat another IMPERIAL GANGSTERS member for providing information regarding the William Longmire murder to the Chicago Police Department.

31.     On or about April 4, 1997, IMPERIAL GANGSTERS members shot and killed

- 11 -

Juana Nieto, a seven-year-old girl, in the area commonly known by the IMPERIAL GANGSTERS as the "Jungle," located in Franklin Park, Illinois. During this same incident, three other persons, victims #3, #4 and #5, including a two-year-old boy, were also shot while the IMPERIAL GANGSTERS shot at a person they suspected of being a member of a rival gang.

32.     On or about September 30, 1998, **MIGUEL PEDRAZA** and other IMPERIAL GANGSTERS flashed gang signs and yelled gang slogans at passersby.

33.     On or about February 10, 1999, **MIGUEL PEDRAZA** and other IMPERIAL GANGSTERS shouted gang slogans.

34.     On or about November 4, 1999, **ROGELIO PEREZ** took property from another person by use of force.

35.     On or about August 3, 2002, **MIGUEL PEDRAZA** shot and killed Jonathan Lawlor, a person **PEDRAZA** believed was a rival gang member, in Chicago, Illinois.

36.     On or about September 1, 2002, IMPERIAL GANGSTERS shot at a group of people, including Ashley Rosada and her infant, who were sitting on a porch of a residence, striking and killing Rosada.

37.     On or about July 1, 2004, **VICTOR EMMANUEL LOPEZ** and other IMPERIAL GANGSTERS members, traveled to the Chicago, Illinois area and met with other IMPERIAL GANGSTERS members.

38.     On or about July 24, 2004, an IMPERIAL GANGSTERS member shot and killed Anuar David Paez, a person the member believed was a rival Two Six gang member in East Chicago, Indiana.

39.     On or about January 2, 2005, **CARLOS MENA** possessed in excess of 500 grams

of marijuana in a Chicago neighborhood controlled by the IMPERIAL GANGSTERS.

40.    On or about March 7, 2005, **GUILLERMO SINISTERRA** and three IMPERIAL GANGSTERS members and three associates, while armed with baseball bats, assaulted victim # 9.

41.    On or about June 28, 2005, **VICTOR EMMANUEL LOPEZ, RAMON MADRUGA, ALEX ENRIQUE SOMARRIBA,** a deceased member of the IMPERIAL GANGSTERS, and Mauricio Waikay, a deceased associate, rode in a vehicle while Waikay was armed with a firearm.

42.    On or about July 8, 2005, an IMPERIAL GANGSTERS member shot and killed Ernest Swift, a person suspected of being a member of a rival gang in Chicago, Illinois.

43.    On or about July 24, 2005, two IMPERIAL GANGSTERS members participated in the murder of suspected rival gang member Guadalupe Trevino, in Gary, Indiana.

44.    On or about April 16, 2006, an IMPERIAL GANGSTERS member shot at two persons, victims #12 and # 13, striking victim #13 in the chest.

45.    On or about April 29, 2006, **RAMON MADRUGA, ALEX SOMARRIBA,** and other IMPERIAL GANGSTERS, were involved in a fight, during which at least one gang member fired a gun. The IMPERIAL GANGSTERS then drove off in a car in which two guns were hidden in the engine compartment.

46.    On or about June 5, 2006, **RYAN PEREZ** possessed a quantity of cocaine base.

47.    On or about August 4, 2006, **VICTOR EMMANUEL LOPEZ,** and Piero Benitez shot three persons, killing Rivky Josma and injuring victims #15 and #16.

48.    On or about May 21, 2007, **VICTOR EMMANUEL LOPEZ** and **GUILLERMO SINISTERRA** participated in a drive-by shooting in Miami, Florida, shooting at a person they

believed was a rival gang member and shooting another person, a juvenile girl, victim #17.

49.     On or about June 2, 2007, **RAMON MADRUGA** and another IMPERIAL GANGSTER confronted two juvenile girls, victims #18 and #19, walking through IMPERIAL GANGSTERS territory. When the girls' brother, victim #20, and father, victim #21, came to their aid, an IMPERIAL GANGSTERS member shot victim #21 in the leg.

50.     On or about June 7, 2007, **GUILLERMO SINISTERRA** possessed a firearm in a neighborhood in Chicago controlled by the IMPERIAL GANGSTERS and fled from police.

51.     In or about June, 2007, **JOSE IVAN HERRERA**, **VICTOR  EMMANUEL LOPEZ,** and **RAMON MADRUGA**, all South Florida-based IMPERIAL GANGSTERS, traveled to Chicago, Illinois, and met with **GUILLERMO SINISTERRA** and other Chicago-based IMPERIAL GANGSTERS.

52.     On or about June 18, 2007, **JOSE IVAN HERRERA**, **VICTOR EMMANUEL LOPEZ, RAMON MADRUGA**, and other IMPERIAL GANGSTERS flashed gang signs and yelled gang slogans at persons in a neighborhood in Chicago controlled by the IMPERIAL GANGSTERS.

53.     On or about June 22, 2007, **RAMON MADRUGA** threatened victim #20 and the other witnesses to the June 2, 2007, incident while victim #21 was in Miami-Dade County Court to testify against **MADRUGA** and another IMPERIAL GANGSTERS member.

54.     On or about June 25, 2007, in Chicago, Illinois, an IMPERIAL GANGSTERS member fired multiple shots at a group of rival gang members, resulting in the death of a bystander, thirteen-year-old Schanna Gayden.

55.     On or about July 25, 2007, **JOSE IVAN HERRERA**, **LEONEL ANDRES**

CARRERA, and another IMPERIAL GANGSTERS member shot from a vehicle at victims #23, #24, #25 and #26, persons HERRERA, CARRERA and the other member believed were rival gang members.

56.　On or about August 3, 2007, a group of IMPERIAL GANGSTERS confronted a group of men they believed to be associated with a rival gang, and an IMPERIAL GANGSTERS member shot victim #27 in the back as he was running away, causing permanent paralysis.

57.　On or about August 9, 2007, an IMPERIAL GANGSTERS member possessed a quantity of cocaine in Hialeah, Florida.

58.　On or about August 16, 2007, an IMPERIAL GANGSTERS member possessed a quantity of cocaine and MDMA in Hialeah, Florida.

59.　On or about September 8, 2007, JOSE IVAN HERRERA, LEONEL ANDRES CARRERA and another IMPERIAL GANGSTER assaulted victim #28, who they suspected was a rival gang member, and his female companion, victim #29.

60.　On or about October 15, 2007, GUILLERMO SINISTERRA flashed gang signs in a Chicago neighborhood controlled by the IMPERIAL GANGTERS.

61.　On or about November 20, 2007, JOSE IVAN HERRERA and LEONEL ANDRES CARRERA shot at rival gang members Hockynson Sanchez, aka "Jaxx," and victim #31, and an associate, victim #32, killing Sanchez.

62.　In or about approximately January, 2008, an IMPERIAL GANGSTERS member supplied JOSE IVAN HERRERA and LEONEL ANDRES CARRERA with a semiautomatic pistol.

63.　On or about March 10, 2008, GUILLERMO SINISTERRA and two other

IMPERIAL GANGSTERS members flashed gang signs and yelled gang slogans at passing vehicles.

64.    On or about March 25, 2008, an IMPERIAL GANGSTERS member shot and killed suspected rival gang member Mariano Soriano in East Chicago, Indiana.

65.    On or about April 19, 2008, **GUILLERMO SINISTERRA** was in a vehicle with three other IMPERIAL GANGSTERS members circling a Chicago neighborhood controlled by the IMPERIAL GANGSTERS.

66.    On or about June 5, 2008, **JOSE IVAN HERRERA, LEONEL ANDRES CARRERA** and another IMPERIAL GANGSTERS member robbed at gunpoint victims #34 and #35, resulting in the other IMPERIAL GANGSTERS member shooting victim #34.

67.    On or about June 6, 2008, **JOSE IVAN HERRERA, LEONEL ANDRES CARRERA**, and the IMPERIAL GANGSTERS member possessed the firearm they used in the June 5, 2008, incident.

68.    On or about February 17, 2009, an IMPERIAL GANGSTERS member sold a quantity of cocaine while armed with a firearm.

69.    On or about July 13, 2009, IMPERIAL GANGSTERS members possessed over 700 rounds of ammunition in East Chicago, Indiana.

70.    On or about July 17, 2009, **ROGELIO PEREZ** ordered the **Darkside Section** of the IMPERIAL GANGSTERS to retaliate against a rival gang due to their shooting of an IMPERIAL GANGSTERS member. An IMPERIAL GANGSTERS member attempted to carry out the order before being arrested by police.

71.    On February 7, 2010, IMPERIAL GANGSTERS members shot and killed Miguel

Colon, who they believed to be a rival gang member, in East Chicago, Indiana.

72.    On or about April 21, 2010, **ROGELIO PEREZ** sold crack cocaine and a firearm to a Cooperating Source.

73.    On May 4, 2010, **EDDIE CAMACHO** sold crack cocaine to Cooperating Source #1.

74.    On or about May 30, 2010, **ROGELIO PEREZ, EDDIE CAMACHO**, and approximately ten other ranking IMPERIAL GANGSTERS participated in a leadership meeting. During this meeting, **CAMACHO** was appointed leader of **Devil Side**. In addition, the murder of a rival gang member by the IMPERIAL GANGSTERS was raised. Other topics included drug and gun trafficking, violent retaliation against rivals, and other areas controlled by the IMPERIAL GANGSTERS including Indiana, Racine, Wisconsin and Miami.

75.    On or about June 11, 2010, **ROGELIO PEREZ, EDDIE CAMACHO,** and other IMPERIAL GANGSTERS members participated in a shooting at a rival gang.

76.    On or about July 13, 2010, **CARLOS MENA** assisted in the sale of crack cocaine to IMPERIAL GANGSTERS members located in Sterling, Illinois.

77.    On or about July 19, 2010, **CARLOS MENA** possessed a firearm.

78.    On or about July 20, 2010, **ROGELIO PEREZ** sold crack cocaine to a member of the IMPERIAL GANGSTERS who transported the crack cocaine to Sterling, Illinois.

79.    On or about July 22, 2010, **CARLOS MENA** passed on **ROGELIO PEREZ's** order to a subordinate IMPERIAL GANGSTERS member to get a firearm and shoot at a rival gang.

80.    On or about July 24, 2010, **CARLOS MENA** told **ROGELIO PEREZ** that he

- 17 -

intended to distribute drugs to subordinate IMPERIAL GANGSTERS and use the proceeds to purchase firearms for the IMPERIAL GANGSTERS.

81.   On or about July 26, 2010, **CARLOS GOMEZ** told **ROGELIO PEREZ** that he has a quantity of drugs, but needed something different.

82.   On or about July 27, 2010, **CARLOS MENA** ordered a quantity of drugs from **ROGELIO PEREZ.**

83.   On or about July 27, 2010, **CARLOS GOMEZ** ordered a quantity of drugs from **ROGELIO PEREZ.**

84.   On or about July 27, 2010, **CARLOS MENA** told **ROGELIO PEREZ** that **MENA** provided information regarding a shooting to **EDDIE CAMACHO**.

85.   On or about August 3, 2010, **CARLOS GOMEZ** and an associate obtained a quantity of heroin from **ROGELIO PEREZ.**

86.   On or about August 6, 2010, an IMPERIAL GANGSTERS member sent a jailhouse letter discussing IMPERIAL GANGSTERS to another inmate in the Florida Department of Corrections.

87.   On or about February 25, 2011, **JOSE IVAN HERRERA, ALEX ENRIQUE SOMARRIBA,** and **RAMON MADRUGA,** following an order they had received from **VICTOR EMMANUAL LOPEZ,** shot and killed Mauricio Waikay, a State witness who had provided information against **VICTOR EMMANUEL LOPEZ.**

88.   In or about April, 2011 IMPERIAL GANGSTERS members attended a meeting at which the leader indicated he would be responsible for locating and killing victim #38, a witness to the Mauricio Waikay murder.

89.     On or about July 10, 2011, an IMPERIAL GANGSTERS member received a commissary deposit to his Florida Department of Corrections account from a girlfriend of **VICTOR EMMANUEL LOPEZ**.

90.     On or about September 10, 2011, **ROGELIO PEREZ**, **MIGUEL PEDRAZA**, and other IMPERIAL GANGSTERS members, attended a gang meeting with leaders of the Insane Dragons, the Latin Souls and Ambrose street gangs. The purpose of the meeting was to discuss an alliance between the gangs, in part, to further facilitate drug trafficking.

91.     On or about September 19, 2011, **ROBERT MARTINEZ** possessed quantities of cocaine, marijuana, and another controlled substance, along with a firearm, and additional ammunition.

92.     On or about October 11, 2011, **MIGUEL PEDRAZA** brokered a firearm sale from an IMPERIAL GANGSTERS member in East Chicago, Indiana to a Cooperating Source #2.

93.     On or about October 26, 2011, an IMPERIAL GANGSTERS member received a commissary payment to his Florida Department of Corrections account from a girlfriend of **VICTOR EMMANUEL LOPEZ**.

94.     On or about November 1, 2011, **ROBERT MARTINEZ** and other IMPERIAL GANGSTERS members and associates were involved in a verbal altercation with victim #39 that escalated into a fight. One of the members stabbed victim #39 multiple times with a knife.

95.     On or about November 3, 2011, **ROGELIO PEREZ** traveled from Chicago to South Florida with Cooperating Source #2 to meet with other IMPERIAL GANGSTERS members.

96.     From on or about November 4, 2011 through on or about November 6, 2011,

**ROGELIO PEREZ** and Cooperating Source #2 met with other IMPERIAL GANGSTERS members in South Florida to discuss drug trafficking and other related IMPERIAL GANGSTERS activity.

97.   On or about November 28, 2011, **MIGUEL PEDRAZA** sold a firearm to a Cooperating Source #2.

98.   On or about November 29, 2011, **MIGUEL PEDRAZA** sold two firearms to a Cooperating Source #2.

99.   On or about December 27, 2011, an IMPERIAL GANGSTERS member received a commissary payment to his Florida Department of Corrections account from a girlfriend of **VICTOR EMMANUEL LOPEZ**.

100.   On or about January 3, 2012, an IMPERIAL GANGSTERS member, while incarcerated in the Florida Department of Corrections and using a contraband cell phone, contacted Cooperating Source #2.

101.   On or about January 16, 2012, Cooperating Source #2 purchased a firearm from an IMPERIAL GANGSTERS member in South Florida.

102.   On or about January 31, 2012, **MIGUEL PEDRAZA, RYAN PEREZ,** and another IMPERIAL GANGSTERS member distributed a quantity of heroin to another IMPERIAL GANGSTERS member from the state of Wisconsin.

103.   On or about January 23, 2012, an IMPERIAL GANGSTERS member, while incarcerated in the Florida Department of Corrections and using a contraband cell phone, contacted Cooperating Source #2 to discuss gang matters.

104.   On or about February 9, 2012, **ROGELIO PEREZ,** another IMPERIAL

- 20-

GANGSTERS member, and an associate, along with Cooperating Source #2, traveled from Chicago to South Florida to meet with other IMPERIAL GANGSTERS members.

105.    From on or about February 10, 2012, through on or about February 12, 2012, two IMPERIAL GANGSTERS leaders, and Cooperating Source #2 met with **ROBERT MARTINEZ,** and other IMPERIAL GANGSTERS members and associates in the Miami, Florida area.

106.    On or about approximately March 2, 2012, an IMPERIAL GANGSTERS member, while incarcerated in the Florida Department of Corrections, used a contraband cell phone to contact Cooperating Source #2 in Chicago.

107.    On or about March 16, 2012, **ROGELIO PEREZ,** and other ranking IMPERIAL GANGSTERS members attended a meeting. During this meeting, the members discussed concerns about another member cooperating with law enforcement. Also, the leaders discussed an internal dispute of the "Jungle Section" and a dispute between the two East Chicago, Indiana Sections.

108.    On or about March 22, 2012, **ROGELIO PEREZ,** and other ranking IMPERIAL GANGSTERS members attended a meeting to resolve an internal dispute of the "Jungle Section."

109.    On or about April 6, 2012, **VICTOR EMMANUEL LOPEZ** sent a letter discussing gang-related matters to **ROBERT MARTINEZ.**

110.    On or about April 27, 2012, **VICTOR EMMANUEL LOPEZ** sent a letter discussing gang-related matters to **ROBERT MARTINEZ.**

111.    Between April 27, 2012, and April 29, 2012, Cooperating Source #2, traveled from Chicago to South Florida and met with **ROBERT MARTINEZ,** and other IMPERIAL

GANGSTERS members. During these meetings, Cooperating Source #2, **ROBERT MARTINEZ,** and the IMPERIAL GANGSTERS members discussed facilitating drug trafficking.

112.    On or about May 26, 2012, **GUILLERMO SINISTERRA** was ejected from a bar for flashing IMPERIAL GANGSTERS gang signs and punched two patrons as he was escorted out of the bar.

113.    In or about the summer of 2012, **EDDIE CAMACHO** took over the "street leadership" of the Chicago area IMPERIAL GANGSTERS from **ROGELIO PEREZ** after **PEREZ** was indicted in the Northern District of Illinois.

114.    On or about June 12, 2012, **MIGUEL PEDRAZA** possessed cocaine and drug paraphernalia in his residence in Chicago, Illinois.

115.    From on or about June 15, 2012, through on or about June 26, 2012, **VICTOR EMMANUEL LOPEZ** sent four letters discussing gang matters to IMPERIAL GANGSTERS members including one letter to one member and two to another member.

116.    On or about June 23, 2012, **GUILLERMO SINISTERRA** participated in a fight with other IMPERIAL GANGSTERS members in a Chicago neighborhood controlled by the IMPERIAL GANGSTERS.

117.    On or about April 23, 2013, **RYAN PEREZ** distributed a quantity of heroin and possessed ten additional bags of heroin and $2880.00 in United State currency.

118.     On or about July 11 and July 13, 2012, **VICTOR EMMANUEL LOPEZ** sent two letters discussing gang matters to **RAMON MADRUGA**.

119.    On or about July 16, 2012, **VICTOR EMMANUEL LOPEZ** sent a letter discussing gang matters to **ROBERT MARTINEZ.**

- 22-

120.     From on or about August 14, 2012, through on or about October 12, 2012, **VICTOR EMMANUEL LOPEZ** received five letters discussing gang matters from IMPERIAL GANGSTERS members.

121.     On or about September 7, 2012, **VICTOR EMMANUEL LOPEZ** sent a letter discussing gang matters to **RAMON MADRUGA**.

122.     On or about September 11, 2012, **VICTOR EMMANUEL LOPEZ** sent a letter discussing gang matters to another IMPERIAL GANGSTERS member.

123.     On or about September 20, 2012, an IMPERIAL GANGSTERS member sent a letter discussing gang-related matters to **VICTOR EMMANUEL LOPEZ**.

124.     On or about October 29, 2012, **RAMON MADRUGA**, while incarcerated in a jail in Miami-Dade County, called another IMPERIAL GANGSTER member, who then placed a three-way call to a third member to discuss gang matters.

125.     On or about approximately November 2, 2012, **RAMON MADRUGA,** while incarcerated in jail in Miami-Dade County, called another IMPERIAL GANGSTER member, and discussed gang-related matters.

126.     On or about November 4, 2012, **RAMON MADRUGA,** while incarcerated in jail in Miami-Dade County, called another IMPERIAL GANGSTERS member, who then placed a three-way call to a third member to discuss gang matters.

127.     From on or about November 13, 2012, until on or about November 30, 2012, **RAMON MADRUGA,** while incarcerated in jail in Miami-Dade County, called another IMPERIAL GANGSTERS member to discuss gang-related matters.

128.     On or about January 12, 2013, IMPERIAL GANGSTERS members met with

Cooperating Source #3 and discussed gang-related matters. One of the members made telephonic contact with **RAMON MADRUGA**, who stated he had contacted **GUILLERMO SINISTERRA** to vet Cooperating Source #3.

129.    On or about January 12, 2013, IMPERIAL GANGSTERS members met with a Cooperating Source #3 in South Florida and discussed gang-related matters. One member made telephonic contact with **RAMON MADRUGA**, who stated he had contacted **GUILLERMO SINISTERRA** to vet Cooperating Source #3.

130.    On or about March 13, 2013, an IMPERIAL GANGSTERS member sent a letter discussing gang-related matters to **VICTOR EMMANUEL LOPEZ**.

131.    On or about February 22, 2013, and March 7, 2013, an IMPERIAL GANGSTERS member sent letters discussing gang-related matters to **VICTOR EMMANUEL LOPEZ**.

132.    On or about March 25, 2013, **VICTOR EMMANUEL LOPEZ** sent a letter discussing gang matters to **ALEX ENRIQUE SOMARRIBA**.

133.    On or about May 05, 2013, an IMPERIAL GANGSTERS member received a commissary payment to his Florida Department of Corrections account from the girlfriend of **VICTOR EMMANUEL LOPEZ**.

134.    In or about 2013, the exact dates being unknown to the grand jury, Santiago Salcedo planned to locate and kill victim #38, a witness to the February 25, 2011 murder of Mauricio Waikay.

135.    On or about July 9, 2013, **ROBERT MARTINEZ** fired a firearm at victim #40. On the same date, **MARTINEZ** possessed a quantity of cocaine.

136.    On or about August 5, 2013, **CARLOS SANTIAGO** was gathered with a group

of four IMPERIAL GANGSTERS members in an area controlled by the IMPERIAL GANGSTERS. One of the other gang members with **SANTIAGO** at the time was in possession of a firearm.

137.    On or about February 2, 2014, an IMPERIAL GANGSTERS member made contact via text message with **JOSE IVAN HERRERA**.

138.    On or about February 8, 2014, **JOSE IVAN HERRERA** invited another IMPERIAL GANGSTERS member to an IMPERIAL GANGSTERS meeting via text message.

139.    On or about March 15, 2014, an IMPERIAL GANGSTERS member invited **JOSE IVAN HERRERA** to an IMPERIAL GANGSTERS meeting via text message.

140.    On or about March 22, 2014, **JOSE IVAN HERRERA** invited another IMPERIAL GANGSTERS member to a gang meeting via text message.

141.    On or about March 27, 2014, **EDDIE COMACHO** possessed 24 bags of cocaine.

142.    On or about March 29, 2014, **JOSE IVAN HERRERA** invited another IMPERIAL GANGSTERS member to an IMPERIAL GANGSTERS meeting via text message.

143.    On or about March 31, 2014, an IMPERIAL GANGSTERS member invited **JOSE IVAN HERRERA** and another IMPERIAL GANGSTERS member to an IMPERIAL GANGSTERS meeting via text message.

144.    On or about April 7, 2014, an IMPERIAL GANGSTERS member invited **JOSE IVAN HERRERA** to an IMPERIAL GANGSTERS meeting via text message.

145.    On or about April 13, 2014, an IMPERIAL GANGSTERS member invited **JOSE IVAN HERRERA** to an IMPERIAL GANGSTERS meeting via text message.

146.    On or about April 26, 2014, **CARLOS GOMEZ** distributed a quantity of heroin.

147.    On or about May 2, 2014, an IMPERIAL GANGSTERS member sent numerous pictures and text messages to the phone of another IMPERIAL GANGSTERS member in reference to gang meetings.

148.    On or about May 2, 2014, **CARLOS GOMEZ** distributed a quantity of heroin.

149.    On or about May 2, 2014, **JOSE IVAN HERRERA** and **LEONEL ANDRES CARRERA** lied about their involvement in the IMPERIAL GANGSTERS enterprise, including but not limited to denying knowledge of and participation in the murder of Hockynson Sanchez, among other acts.

150.    On or about May 6, 2014, **CARLOS GOMEZ** distributed a quantity of heroin.

151.    On or about May 14, 2014, **GUILLERMO SINISTERRA** "posted up" with multiple members of the IMPERIAL GANGSTERS in a Chicago neighborhood controlled by the IMPERIAL GANGSTERS.

152.    On or about May 30, 2014, **EDDIE CAMACHO** possessed a firearm and three bags of cocaine.

153.    In or about September, 2014, **RYAN PEREZ** possessed a quantity of heroin in his residence. Another IMPERIAL GANGSTERS member was suspected of stealing the heroin. **EDDIE CAMACHO** ordered a "green light" on that member.

### Notice of Enhanced Sentencing

154.    Starting from in or about 1985, and continuing through on or about the date of the return of this Second Superseding Indictment, in the Southern District of Florida and elsewhere, **JOSE IVAN HERRERA, a/k/a "Spyro," LEONEL ANDRES CARRERA, a/k/a "Leo," VICTOR EMMANUEL LOPEZ, a/k/a "Magic," RAMON MADRUGA, a/k/a "Porky," and**

ENRIQUE SOMARRIBA, a/k/a "A-Rock," ROGELIO PEREZ, a/k/a "Popeye," EDDIE CAMACHO, a/k/a "NeNe," MIGUEL PEDRAZA, a/k/a "Fuzzy," RYAN PEREZ, a/k/a "Lil Dk," CARLOS MENA, a/k/a "Rollo," ROBERT MARTINEZ, a/k/a "Trap," CARLOS GOMEZ, a/k/a "Lokes," and GUILLERMO SINISTERRA, a/k/a "Memo," conspired to knowingly and intentionally possess with the intent to distribute five kilograms or more of a substance containing cocaine, two hundred and eighty grams or more of a substance containing cocaine base, one kilogram or more of a substance containing heroin, a thousand kilograms or more of a substance containing marijuana, in violation of 21 United States Code Section 846.

155.   August 3, 2002, in the Southern District of Florida and elsewhere, MIGUEL PEDRAZA without lawful justification and with intent to kill, did kill Jonathan Lawlor, in violation of Illinois Statute Chapter 720 Section 5/9-1.

156.   On or about August 4, 2006, in the Southern District of Florida and elsewhere, VICTOR EMMANUEL LOPEZ unlawfully killed a human being, Rivky Josma, while perpetrating an act imminently dangerous to another and evincing depraved mind regardless of human life, in violation of Florida Penal Code, Title XLVI, Chapters 782.04 and 777.011.

157.   On or about November 20, 2007, in the Southern District of Florida and elsewhere, JOSE IVAN HERRERA and LEONEL ANDRES CARRERA unlawfully killed a human being, Hockynson Sanchez, while perpetrating an act imminently dangerous to another and evincing depraved mind regardless of human life, in violation of Florida Penal Code, Title XLVI, Chapters 782.04 and 777.011.

158.   On February 25, 2011, in the Southern District of Florida and elsewhere, VICTOR EMMANUEL LOPEZ, JOSE IVAN HERRERA, RAMON MADRUGA, a/k/a "Porky," and

**ALEXANDER SOMARRIBA,** unlawfully killed a human being, Mauricio Waikay, while perpetrating a premeditated design to effect the death of Mauricio Waikay, in violation of Florida Penal Code, Title XLVI, Chapters 782.04 and 777.011.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT 2

### Murder in Aid of Racketeering Activity
### 18 U.S.C. § 1959(a)(1)

159.    At all times relevant to this Second Superseding Indictment the IMPERIAL GANGSTERS, including its leadership, membership and associates, as more fully described in paragraphs 1 through 11 of Count One of this Second Superseding Indictment, which are re-alleged and incorporated by reference as though fully set forth herein, constituted an enterprise as defined in 18 U.S.C. § 1959(b)(2), namely IMPERIAL GANGSTERS, that is, a group of individuals associated in fact which is engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

160.    At all times relevant to this Second Superseding Indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1), namely, narcotics trafficking in violation of 21 U.S.C. §§ 841 and 846, multiple acts involving robbery and murder in violation of Illinois Criminal Code, Florida Penal Code and Indiana Code, multiple acts indictable under 18 United States Code Section 1951 (Hobbs Act Robbery), and 18 United States Code Section 1952 (Interstate Travel in Aid of Racketeering).

161.    On or about August 4, 2006, in Miami-Dade County in the Southern District of

Florida, and elsewhere, the Defendants

**VICTOR EMMANUEL LOPEZ,**
**a/k/a "Magic,"**
**and**
**PIERO BENITEZ,**
**a/k/a "Bam Bam,"**

for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an

enterprise engaged in racketeering activity, murdered Rivky Josma, in violation of Florida Penal

Code, Title XLVI, Chapters 782.04 and 777.011.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United

States Code, Section 2.

## **NOTICE OF SPECIAL FINDINGS**

### **(18 U.S.C. §§ 3591 and 3592)**

162.     The Grand Jury incorporates by reference and re-alleges the allegations contained

in Count 1 of this Indictment and makes the following special findings as to Count 1, the

defendants:

**VICTOR EMMANUEL LOPEZ,**
**a/k/a "Magic,"**
**and**
**PIERO BENITEZ,**
**a/k/a "Bam Bam,"**

a.        Were 18 years of age or older at the time of the offenses. [Title 18, United States

Code, Section 3591(a)];

b.        Intentionally killed the victim, Rivky Josma. [Title 18, United States Code, Section

3591(a)(2)(A)];

c.        Intentionally inflicted serious bodily injury that resulted in the death of the victim,

Rivky Josma. [Title 18, United States Code, Section 3591(a)(2)(B)];

d.      Intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Rivky Josma, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)];

e.      Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Rivky Josma, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)];

f.      Knowingly created a grave risk of death to one or more persons in the commission of the offense, in addition to Rivky Josma. [Title 18, United States Code, Section 3592(c)(5)]; and

g.      Committed the offense after substantial planning and premeditation to cause the death of Rivky Josma. [Title 18, United States Code, Section 3592(c)(9)].

## COUNT 3

### Murder in Aid of Racketeering Activity
### 18 U.S.C. § 1959(a)(1)

163.    Paragraphs 159 through 160 of Count 2 of this Second Superseding Indictment are re-alleged and incorporated by reference.

164.    On or about November 20, 2007, in Miami-Dade County in the Southern District of Florida, and elsewhere, the Defendants,

**JOSE IVAN HERRERA,**
**a/k/a "Spyro,"**
**and**
**LEONEL ANDRES CARRERA,**
**a/k/a "Leo,"**

for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Hockynson Sanchez, in violation of Florida Penal Code, Title XLVI, Chapters 782.04 and 777.011.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

## COUNT 4

### Interstate Travel in Aid of Racketeering
### 18 U.S.C. § 1952(a)(3)

165.    On or about November 4, 2011, in Miami-Dade County in the Southern District of Florida and elsewhere, the Defendant,

### ROGELIO PEREZ, JR.,
### a/k/a "Popeye,"

traveled in interstate commerce from the State of Illinois to the State of Florida, with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, possession with intent to distribute and to distribute a controlled substance in violation of 21 U.S.C. §§ 841 and 846, and thereafter performed and attempted to perform an act to promote, manage, establish and carry on and facilitate the promotion, management, establishment and carrying on, of such unlawful activity.

All in violation of Title 18, United States Code, Sections 1952(a)(3) and Title 18, United States Code, Section 2.

## COUNT 5

### Interstate Travel in Aid of Racketeering
### 18 U.S.C. § 1952(a)(3)

166.    In or about February of 2012, in Miami-Dade County in the Southern District of

Florida and elsewhere, the Defendants,

**ROGELIO PEREZ, JR.,**
a/k/a "Popeye,"

traveled in interstate commerce from the State of Illinois to the State of Florida, with intent to

promote, manage, establish, carry on and facilitate the promotion, management, establishment and

carrying on of an unlawful activity, that is, possession with intent to distribute and to distribute a

controlled substance in violation of 21 U.S.C. §§ 841 and 846, and thereafter performed and

attempted to perform an act to promote, manage, establish and carry on and facilitate the

promotion, management, establishment and carrying on, of such unlawful activity.

All in violation of Title 18, United States Code, Sections 1952(a)(3) and Title 18, United

States Code, Section 2.

.

**COUNT 6**

**Conspiracy to Murder in Aid of Racketeering Activity**
**18 U.S.C. § 1959(a)(5)**

167.    Paragraphs 159 through 160 of Count 2 of this Second Superseding Indictment are

re-alleged and incorporated by reference as though set forth fully herein.

168.    From in or about 2013, and continuing to the date of the return of this Second

Superseding Indictment, the exact dates unknown to the Grand Jury in the Southern District of

Florida, and elsewhere, the defendant,

**SANTIAGO SALCEDO,**
a/k/a "Chino,"

along with others known and unknown to the Grand Jury, for the purpose of maintaining and

increasing position in IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity,

- 32-

did intentionally and knowingly conspire to murder victim #37 in violation of Florida Penal Code, Title XLVI, Chapters 782.04 and 777.011.

All in violation of Title 18, United States Code, Section 1959(a)(5).

A TRUE BILL:

_____
FOREPERSON

JAMES M. TRUSTY
CHIEF, ORGANIZED CRIME AND GANG SECTION
DEPARTMENT OF JUSTICE

By: _____
Joseph A. Cooley
Trial Attorney

_____
Rebecca A. Staton
Trial Attorney

- 33-

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

vs.

JOSE IVAN HERRERA, et al.,

Defendants.

CASE NO.    14-20286-CR-ALTONAGA(ss)

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

**Court Division:** (Select One)

__X__ Miami  ____ Key West
____ FTL    ____ WPB    ____ FTP

New Defendant(s)         Yes __X__  No ____
Number of New Defendants      10
Total number of counts        6

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:    (Yes or No)        No
     List language and/or dialect        English

4.   This case will take    45    days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

     (Check only one)                          (Check only one)

     I     0 to 5 days       ____         Petty      ____
     II    6 to 10 days      ____         Minor      ____
     III   11 to 20 days     ____         Misdem.    ____
     IV    21 to 60 days     __X__        Felony     __X__
     V     61 days and over  ____

6.   Has this case been previously filed in this District Court? (Yes or No)    Yes
     If yes:
     Judge: __ALTONAGA__              Case No.    14-20286-CR-ALTONAGA(s)
     (Attach copy of dispositive order)
     Has a complaint been filed in this matter?    (Yes or No)    No
     If yes:
     Magistrate Case No.    _____
     Related Miscellaneous numbers:    _____
     Defendant(s) in federal custody as of    _____
     Defendant(s) in state custody as of    _____
     Rule 20 from the _____    District of _____

     Is this a potential death penalty case? (Yes or No)    Yes

7.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    ____ Yes    __X__ No

8.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?    ____ Yes    __X__ No

                                   (SHARAD MOTIANI)
                              FOR JOSEPH A. COOLEY
                                   ASSISTANT UNITED STATES ATTORNEY
                                   Florida Bar No./Court No.  A5501977

*Penalty Sheet(s) attached                                      REV 10/2013

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: LEONEL ANDRES CARRERA, a/k/a "Leo"

**Case No**: 14-20286-CR-ALTONAGA(s)(s)

Count #: 1

Conspiracy to Participate in Racketeering Activity

Title 18, United States Code, Section 1962(d)

**\* Max.Penalty**: Life Imprisonment

Count #: 3

Murder in the Aid of Racketeering Activity

Title 18, United States Code, Section 1959(a)(1)

**\* Max.Penalty**:

Count #:



**\* Max.Penalty**:

Count #:



**\* Max.Penalty**:

**Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: VICTOR EMMANUEL LOPEZ, a/k/a "Magic,"

**Case No**: 14-20286-CR-ALTONAGA(s)(s)

Count #: 1

Conspiracy to Participate in Racketeering Activity

Title 18, United States Code, Section 1962(d)

**\* Max.Penalty**: Life Imprisonment

Count #: 2

Murder in the Aid of Racketeering Activity

Title 18, United States Code, Section 1959(a)(1)

**\* Max.Penalty**: Death or Life Imprisonment

Count #:

 

 

**\* Max.Penalty**:

Count #:

 

 

**\* Max.Penalty**:

**Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**PENALTY SHEET**

**Defendant's Name**:  RAMON MADRUGA, a/k/a "Porky,"

**Case No**:  14-20286-CR-ALTONAGA(s)(s)

Count  #: 1

Conspiracy to Participate in Racketeering Activity

Title 18, United States Code, Section 11962(d)

**\* Max.Penalty**:  Life Imprisonment

Count  #:


**\* Max.Penalty**:

Count  #:


**\* Max.Penalty**:

Count  #:


**\* Max.Penalty**:


**Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: ALEX ENRIQUE SOMARRIBA, a/k/a "A-Rock"

**Case No**: 14-20286-CR-ALTONAGA(s)(s)

Count #: 1

Conspiracy to Participate in Racketeering Activity

Title 18, United States Code, Section 1962(d)

**\* Max.Penalty**: Life Imprisonment

Count #:


**\* Max.Penalty**:

Count #:


**\* Max.Penalty**:

Count #:


**\* Max.Penalty**:


**Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**:  ROGELIO PEREZ, a/k/a "Popeye"

**Case No**:  14-20286-CR-ALTONAGA(s)(s)

Count #: 1

Conspiracy to Participate in Racketeering Activity

Title 18, United States Code, Section 1962(d)

**\* Max.Penalty**:  Life Imprisonment

Count #: 4

Interstate Travel in Aid of Racketeering

Title 18, United States Code, Section 1952(a)(3)

**\* Max.Penalty**:  Five Years Imprisonment

Count #: 5

Interstate Travel in Aid of Racketeering

Title 18, United States Code, Section 1952(a)(3)

**\* Max.Penalty**:  Five Years Imprisonment

Count #:

**\* Max.Penalty**:

**Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name:  EDDIE CAMACHO, a/k/a "NeNe"

Case No:  14-20286-CR-ALTONAGA(s)(s)

Count #: 1

Conspiracy to Participate in Racketeering Activity

Title 18, United States Code, Section 1962(d)

* Max.Penalty:  Life Imprisonment

Count #:

* Max.Penalty:

Count #:

* Max.Penalty:

Count #:

* Max.Penalty:

**Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**PENALTY SHEET**

**Defendant's Name**: MIGUEL PEDRAZA, a/k/a "Fuzzy"

**Case No**: 14-20286-CR-ALTONAGA(s)(s)

Count #: 1

Conspiracy to Participate in Racketeering Activity

Title 18, United States Code, Section 1962(d)

**\* Max.Penalty**: Life Imprisonment

Count #:

**\* Max.Penalty**:

Count #:

**\* Max.Penalty**:

Count #:

**\* Max.Penalty**:

**Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**  RYAN PEREZ, a/k/a "Lil Dk"

**Case No:**  14-20286-CR-ALTONAGA(s)(s)

Count #: 1

Conspiracy to Participate in Racketeering Activity

Title 18, United States Code, Section 1962(d)

**\* Max.Penalty:**  Life Imprisonment

Count #:


**\* Max.Penalty:**

Count #:


**\* Max.Penalty:**

Count #:


**\* Max.Penalty:**


**Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**PENALTY SHEET**

**Defendant's Name**:  CARLOS MENA, a/k/a "Rollo"

**Case No**:  14-20286-CR-ALTONAGA(s)(s)

Count #: 1

Conspiracy to Participate in Racketeering Activity

Title 18, United States Code, Section 1962(d)

**\* Max.Penalty**:  Life Imprisonment

Count #:

**\* Max.Penalty**:

Count #:

**\* Max.Penalty**:

Count #:

**\* Max.Penalty**:

**Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**:  ROBERT MARTINEZ, a/k/a "Trap"

**Case No**:  14-20286-CR-ALTONAGA(s)(s)

Count #: 1

Conspiracy to Participate in Racketeering Activity

Title 18, United States Code, Section 1962(d)

**\* Max.Penalty**:  Life Imprisonment

Count #:

**\* Max.Penalty**:

Count #:

**\* Max.Penalty**:

Count #:

**\* Max.Penalty**:

**Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** CARLOS GOMEZ, a/k/a "Lokes"

**Case No:** 14-20286-CR-ALTONAGA(s)(s)

Count #: 1

Conspiracy to Participate in Racketeering Activity

Title 18, United States Code, Section 1962(d)

**\* Max.Penalty:** Life Imprisonment

Count #:



**\* Max.Penalty:**

Count #:



**\* Max.Penalty:**

Count #:



**\* Max.Penalty:**


**Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**:  GUILLERMO SINISTERRA, a/k/a "Memo"

**Case No**:  14-20286-CR-ALTONAGA(s)(s)

Count  #: 1

Conspiracy to Participate in Racketeering Activity

Title 18, United States Code, Section 1962(d)

**\* Max.Penalty**:  Life Imprisonment

Count  #:


**\* Max.Penalty**:

Count  #:


**\* Max.Penalty**:

Count  #:


**\* Max.Penalty**:


**Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: PIERO BENITEZ, a/k/a "Bam-Bam"

**Case No:** 14-20286-CR-ALTONAGA(s)(s)

Count #: 2

Murder in Aid of Racketeering Activity

Title 18, United States Code, Section 1959(a)(1)

**\* Max.Penalty**: Death or Life Imprisonment

Count #:

**\* Max.Penalty**:

Count #:

**\* Max.Penalty**:

Count #:

**\* Max.Penalty**:

**Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: SANTIAGO SALCEDO, a/k/a "Chino"

**Case No**: 14-20286-CR-ALTONAGA(s)(s)

Count #: 6

Conspiracy to Participate in Racketeering Activity

Title 18, United States Code, Section 1962(d)

**\* Max.Penalty**: Ten Years Imprisonment

Count #:


**\* Max.Penalty**:

Count #:


**\* Max.Penalty**:

Count #:


**\* Max.Penalty**:


**Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**